UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

JORGE SOLANO-MORETA,

        Plaintiff,

v.

HEIDI WASHINGTON et al.,

        Defendants.
_____/

Case No 2:18-cv-111

Honorable Gordon J. Quist

## OPINION

This is a civil rights action brought by a federal prisoner, who was formerly housed in a Michigan State prison, brought pursuant to 42 U.S.C. § 1983 and *Bivens v. Six Unknown Named Agents of Fed. Bur. of Narcotics*, 403 U.S. 388 (1971). Under Federal Rule of Civil Procedure 21, the Court is permitted to drop parties *sua sponte* when the parties have been misjoined. Pursuant to that rule, the Court will drop as misjoined Defendants Bousquet, Mohan, Bradshaw, James, Scott, and Gillet. The Court also will dismiss Count 13 against Defendant Washington as misjoined.

## Discussion

### I. Factual allegations

Plaintiff is presently incarcerated with the Federal Bureau of Prisons (BOP) at the United States Penitentiary (USP), McCreary, located in Pine Knot, Kentucky. The actions about which he complains, however, occurred while he was under the jurisdiction of the BOP, but housed in the Michigan Department of Corrections (MDOC) at the Marquette Branch Prison (MBP) in Marquette, Marquette County, Michigan. In his amended complaint (ECF No. 16), Plaintiff sues

MDOC Director Heidi Washington and MDOC Psychiatric Director/Supervisor (unknown) Bradshaw, together with the following MBP officials: Warden Erica Huss; former Warden Robert Napel; Health Service Administrator (unknown) Scott; Assistant Administrator Sarah Schroeder; Hearing Officer (unknown) Mohan; Food Service Administrator Ann Bousquet; Dentist (unknown) Gillet; Property Department Supervisor (unknown) Durand; and Nurse/Nurse Supervisor Brenda James. Plaintiff also sues the following officials at the Federal Correctional Institution (FCI), Milan, Michigan: Case Manager Matthew Call; and Unit Manager James Billingslly.

In his amended complaint, Plaintiff aggregates all of the allegedly unconstitutional actions that occurred during his two-year confinement at MBP, between August 4, 2016, and August 14, 2018.

In his first set of allegations, Plaintiff complains that Defendants Schroeder, Huss, and Napel violated his First Amendment rights and BOP policy by refusing to permit Plaintiff to correspond with his brother, who is also a prisoner in the custody of the BOP. In Count 2, Plaintiff alleges that Defendants Billingslly, Call, Napel, and Washington deprived him of his rights under the Fifth and Fourteenth Amendments, by transferring him to and keeping him in a Level-V prison[1] without due process. In Count 3, Plaintiff alleges that Defendant Hearing Officer Mohan denied him due process when, on June 19, 2017, Mohan found Plaintiff guilty of two misconduct charges that Plaintiff alleges were false.

In his fourth cause of action, Plaintiff claims that Defendants Billingslly, Call, Washington, Napel, and Huss subjected him to cruel and unusual punishment by placing him and keeping him at MBP,

---

[1] In the MDOC, security classifications, from least to most secure, are as follows: Levels I, II, IV, V and administrative segregation. Mich. Dep't of Corr., Policy Directive 05.01.130, ¶ B (effective Oct. 10, 2011).

> Because MBP: (A) Is contaminated with Asbestos, Led [sic] poison, Black Mold, etc.; (B) Is Bugs Infected with no fumigation policy; (C) Is Amazingly Dirty with old Food smashed on the inside walls of the inmates' Housing Units; (D) Is Birds' feces infected in the inmates' recreation yard and side walks, etc.

(Am. Compl., ECF No. 16, PageID.71.) Plaintiff asserts that, as a result of the conditions, he has suffered unspecified health complications and bug bites.

Fifth, Plaintiff complains that Defendants Napel and Huss violated his rights under the Eighth Amendment when they denied him out-of-cell exercise for 250 days between April 2017 and August 2018, including 60 days straight from January 1, 2018, t0 March 2018. In his sixth count, Plaintiff alleges that Defendant Bousquet violated his rights under the Eighth Amendment by providing fewer than 2,000 calories per day in his segregation diet, causing him to lose 25 pounds and to become fragile and weak by the time of his transfer back to the BOP.

In his seventh cause of action, Plaintiff alleges that Defendants Warden Huss, Assistant Administrator Schroeder, and unspecified other staff have harassed him in retaliation for filing grievances. Plaintiff contends that Defendant Durand "disappeared personal and legal properties of Plaintiff in or about February 2017, June 13, 2017, December 22, 2017, and in or about February 2018." (*Id.*, PageID.73.) In addition, when Plaintiff transferred to the BOP on August 14, 2018, Defendant Huss did not allow him to take his property, informing him that his property and his trust account funds would be forwarded to the BOP. Plaintiff complains that neither the money nor the property has yet arrived. Among the missing property are approximately 50,000 pages of legal documents, including court transcripts; miscellaneous legal journals, books, and magazines; a television; an MP3 player; family letters and pictures; religious material; a radio; clothes and shoes; personal hygiene and food items; and an address book. Further, Plaintiff alleges that he was subjected to other forms of harassment, including interference with his access to the

3

telephone, denial of out-of-cell exercise, and access to medical care, all of which were retaliatory and violated the Eighth Amendment.

Eighth, Plaintiff contends that Defendant Bradshaw violated his Eighth Amendment rights when she discontinued Plaintiff's Wellbutrin on February 6, 2018. Plaintiff complains that he had taken Wellbutrin for over 10 years for his depression and PTSD. Plaintiff contends that Bradshaw's action was based on the fact that Wellbutrin was off-formulary for the MDOC.

In his ninth cause of action, Plaintiff complains that, for the two years he was housed at MBP, Defendants Brenda James and (unknown) Scott denied him medical care for his folliculitis and dermatitis, his dislocated left shoulder, his lower back problem, his foot problems requiring medical shoes with arch support, and his skin allergy requiring a cotton blanket and special creams.

Tenth, Plaintiff complains that Defendant Dentist Gillet deprived him of necessary dental care from August 2017 to October 2017, in violation of the Eighth Amendment, thereby subjecting Plaintiff to significant pain.

In his eleventh claim, Plaintiff alleges that Defendant Washington has an unconstitutional policy to deny inmates root canals to save their teeth. Plaintiff claims that he was denied three necessary root canals.

In his twelfth claim, Plaintiff alleges that Defendant Washington violated his Eighth Amendment right to adequate medical care by having a policy that prevents federal inmates like Plaintiff from participation in a Residential Treatment Program (RTP).

In Count 13, Plaintiff alleges that Defendant Washington's policy of excluding federal inmates from RTP also violates the Equal Protection Clause.

Plaintiff seeks declaratory and injunctive relief, together with compensatory and punitive damages.

II.     Misjoinder

The joinder of claims, parties, and remedies is "strongly encouraged" when appropriate to further judicial economy and fairness. *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966). This does not mean, however, that parties should be given free rein to join multiple plaintiffs and multiple defendants into a single lawsuit when the claims are unrelated. *See, e.g., Pruden v. SCI Camp Hill*, 252 F. App'x 436, 437 (3d Cir. 2007) (per curiam); *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); *Coughlin v. Rogers*, 130 F.3d 1348, 1350 (9th Cir. 1997); *Proctor v. Applegate*, 661 F. Supp. 2d 743, 778 (E.D. Mich. 2009) (adopting magistrate judge's report).

Federal Rule of Civil Procedure 20(a) limits the joinder of parties in single lawsuit, whereas Federal Rule of Civil Procedure 18(a) limits the joinder of claims. Rule 20(a)(2) governs when multiple defendants may be joined in one action: "[p]ersons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Rule 18(a) states: "A party asserting a claim . . . may join, as independent or alternative claims, as many claims as it has against an opposing party."

Courts have recognized that, where multiple parties are named, as in this case, the analysis under Rule 20 precedes that under Rule 18:

> Rule 20 deals solely with joinder of parties and becomes relevant only when there is more than one party on one or both sides of the action. It is not concerned with joinder of claims, which is governed by Rule 18. Therefore, in actions involving multiple defendants Rule 20 operates independently of Rule 18. . . .

5

> Despite the broad language of Rule 18(a), plaintiff may join multiple defendants in a single action only if plaintiff asserts at least one claim to relief against each of them that arises out of the same transaction or occurrence and presents questions of law or fact common to all.

7 Charles Allen Wright, Arthur R. Miller, Mary Kay Kane, Federal Practice & Procedure Civil § 1655 (3d ed. 2001), *quoted in Proctor*, 661 F. Supp. 2d at 778, and *Garcia v. Munoz*, No. 08-1648, 2007 WL 2064476, at *3 (D.N.J. May 14, 2008); *see also Neitzke v. Williams*, 490 U.S. 319, 328 (1989) (joinder of defendants is not permitted by Rule 20 unless both commonality and same transaction requirements are satisfied).

Therefore, "a civil plaintiff may not name more than one defendant in his original or amended complaint unless one claim against each additional defendant is transactionally related to the claim against the first defendant and involves a common question of law or fact." *Proctor*, 661 F. Supp. 2d at 778. When determining if civil rights claims arise from the same transaction or occurrence, a court may consider a variety of factors, including, "the time period during which the alleged acts occurred; whether the acts . . . are related; whether more than one act . . . is alleged; whether the same supervisors were involved, and whether the defendants were at different geographical locations." *Id.* (quoting *Nali v. Michigan Dep't of Corrections*, 2007 WL 4465247, at *3 (E.D. Mich. Dec. 18, 2007)).

Permitting improper joinder in a prisoner civil rights action also undermines the purpose of the PLRA, which was to reduce the large number of frivolous prisoner lawsuits that were being filed in the federal courts. *See Riley v. Kurtz*, 361 F.3d 906, 917 (6th Cir. 2004). Under the PLRA, a prisoner may not commence an action without prepayment of the filing fee in some form. *See* 28 U.S.C. § 1915(b)(1). These "new fee provisions of the PLRA were designed to deter frivolous prisoner litigation by making all prisoner litigants feel the deterrent effect created by

liability for filing fees." *Williams v. Roberts*, 116 F.3d 1126, 1127-28 (5th Cir. 1997). The PLRA also contains a "three-strikes" provision requiring the collection of the entire filing fee after the dismissal for frivolousness, etc., of three actions or appeals brought by a prisoner proceeding in forma pauperis, unless the statutory exception is satisfied. 28 U.S.C. § 1915(g). The "three strikes" provision was also an attempt by Congress to curb frivolous prisoner litigation. *See Wilson v. Yaklich*, 148 F.3d 596, 603 (6th Cir. 1998).

The Seventh Circuit has explained that a prisoner like Plaintiff may not join in one complaint all of the defendants against whom he may have a claim, unless the prisoner satisfies the dual requirements of Rule 20(a)(2):

> Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass that [a multi]--claim, [multi]-defendant suit produce[s] but also to ensure that prisoners pay the required filing fees--for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g) . . . .
>
> A buckshot complaint that would be rejected if filed by a free person -- say, a suit complaining that A defrauded the plaintiff, B defamed him, C punched him, D failed to pay a debt, and E infringed his copyright, all in different transactions -- should be rejected if filed by a prisoner.

*George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); *see also Brown v. Blaine*, 185 F. App'x 166, 168-69 (3r Cir. 2006) (allowing an inmate to assert unrelated claims against new defendants based on actions taken after the filing of his original complaint would have defeated the purpose of the three strikes provision of PLRA); *Patton v. Jefferson Correctional Center*, 136 F.3d 458, 464 (5th Cir. 1998); *Shephard v. Edwards*, 2001 WL 1681145, at *1 (S.D. Ohio Aug. 30, 2001) (declining to consolidate prisoner's unrelated various actions so as to allow him to pay one filing fee, because it "would improperly circumvent the express language and clear intent of the 'three strikes' provision"); *Scott v. Kelly*, 107 F. Supp. 2d 706, 711 (E.D. Va. 2000) (denying prisoner's

7

request to add new, unrelated claims to an ongoing civil rights action as an improper attempt to circumvent the PLRA's filing fee requirements and an attempt to escape the possibility of obtaining a "strike" under the "three strikes" rule). To allow Plaintiff to proceed with improperly joined claims and defendants in a single action would permit him to circumvent the PLRA's filing fee provisions and allow him to avoid having to incur a "strike" for purposes of by § 1915(g), should his claims turn out to be frivolous.

Plaintiff's various allegations relate to numerous alleged constitutional claims arising out of actions that occurred over a two-year period. In his first set of allegations, Plaintiff complains that Defendants Schroeder, Huss, and Napel violated his rights under the First Amendment and BOP policy by refusing to allow Plaintiff to correspond with his brother, who also is in the custody of the BOP. Plaintiff also names at least one of these three Defendants in Counts 2, 4, 5, and 7 of his complaint, which involve claims about his placement and retention in a Level-V facility, the cleanliness of MBP, the restrictions on his ability to exercise, and the taking or destruction of his property. Defendants Billingslly, Call, Washington, and Durand also are named in Counts 2, 4, 5, and 7. As a result, the Court will consider all of the claims raised in Counts 1, 2, 4, 5 and 7 against Defendants Schroeder, Huss, Napel, Billingslly, Call, Washington, and Durand. The remaining counts of the complaint, however, have nothing to do with either Defendants Schroeder, Huss, and Napel or the subject matter of Counts 1, 2, 4, 5, and 7. Count 2 involves Defendant Mohan's adjudication of two misconduct charges against Plaintiff. Count 6 involves Defendant Bousquet's deprivation of adequate food. Counts 8 through 13 involve allegations about the inadequacy of medical treatment and policy. Accordingly, the claims against Defendants Bousquet, Mohan, Bradshaw, James, Scott, and Gillet are not properly joined to the claims against the other defendants. Moreover, Plaintiff's claim in Count 12 against Defendant

8

Washington, involving a medical/dental policy, is unrelated to the claims raised against the Defendants named in Plaintiff's first set of claims.

Under Rule 21 of the Federal Rules of Civil Procedure, "[m]isjoinder of parties is not a ground for dismissing an action." Instead, Rule 21 provides two remedial options: (1) misjoined parties may be dropped on such terms as are just; or (2) any claims against misjoined parties may be severed and proceeded with separately. *See Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567, 572-573 (2004) ("By now, 'it is well settled that Rule 21 invests district courts with authority to allow a dispensable nondiverse party to be dropped at any time . . . .'"); *DirecTV, Inc. v. Leto*, 467 F.3d 842, 845 (3d Cir. 2006); *Carney v. Treadeau*, No. 07-cv-83, 2008 WL 485204, at *2 (W.D. Mich. Feb. 19, 2008); *Coal. to Defend Affirmative Action v. Regents of Univ. of Mich.*, 539 F. Supp. 2d 924, 940 (E.D. Mich. 2008); *see also Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 682 (6th Cir. 1988) ("[D]ismissal of claims against misjoined parties is appropriate."). "Because a district court's decision to remedy misjoinder by dropping and dismissing a party, rather than severing the relevant claim, may have important and potentially adverse statute-of-limitations consequences, the discretion delegated to the trial judge to dismiss under Rule 21 is restricted to what is 'just.'" *DirecTV*, 467 F.3d at 845.

At least three judicial circuits have interpreted "on such terms as are just" to mean without "gratuitous harm to the parties." *Strandlund v. Hawley*, 532 F.3d 741, 745 (8th Cir. 2008) (quoting *Elmore v. Henderson*, 227 F.3d 1009, 1012 (7th Cir. 2000)); *see also DirecTV*, 467 F.3d at 845. Such gratuitous harm exists if the dismissed parties lose the ability to prosecute an otherwise timely claim, such as where the applicable statute of limitations has lapsed, or the dismissal is with prejudice. *Strandlund*, 532 F.3d at 746; *DirecTV*, 467 F.3d at 846-47; *Michaels Bldg. Co.*, 848 F.2d at 682.

9

In this case, Plaintiff brings his claims against the improperly joined Defendants under 42 U.S.C. § 1983. For civil rights suits filed in Michigan under § 1983, the statute of limitations is three years. *See* Mich. Comp. Laws § 600.5805(10); *Carroll v. Wilkerson*, 782 F.2d 44 (6th Cir. 1986) (per curiam); *Stafford v. Vaughn*, No. 97-2239, 1999 WL 96990, at *1 (6th Cir. Feb. 2, 1999). Furthermore, "Michigan law provides for tolling of the limitations period while an earlier action was pending which was later dismissed without prejudice." *Kalasho v. City of Eastpointe*, 66 F. App'x 610, 611 (6th Cir. 2003).

All of the improperly joined claims involve actions that occurred between August 2016 and August 2018, which fall within the three-year period of limitations. Those claims are not at risk of being time-barred. Plaintiff therefore will not suffer gratuitous harm if the improperly joined Defendants are dropped and the claims against them dismissed. Accordingly, the Court will exercise its discretion under Rule 21 and drop Defendants Mohan, Bradshaw, James, Scott, and Gillet from the action, and dismiss Plaintiff's claims against them without prejudice to the institution of new, separate lawsuits by Plaintiff. In addition, the Court will dismiss without prejudice on grounds of misjoinder Plaintiff's claim against Defendant Washington as raised in Count 13 of the complaint.[2] *See Coughlin*, 130 F.3d at 1350 ("In such a case, the court can generally dismiss all but the first named plaintiff without prejudice to the institution of new, separate lawsuits by the dropped plaintiffs"); *Carney*, 2008 WL 485204, at *3 (same).

## Conclusion

For the foregoing reasons, Defendants Mohan, Bousquet, Bradshaw, James, Scott, and Gillet will be dropped from this action because they are misjoined, and Plaintiff's claims

---

[2] Plaintiff is cautioned that he must limit all future actions to Defendants who are transactionally related to one another.

against them will be dismissed without prejudice.  The Court also will dismiss without prejudice Plaintiff's thirteenth count against Defendant Washington, because it is misjoined.


Dated: April 3, 2019                                                  /s/ Gordon J. Quist
                                                                   GORDON J. QUIST
                                                            UNITED STATES DISTRICT JUDGE