UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

JORGE SOLANO-MORETA,

                Plaintiff,

v.

HEIDI WASHINGTON et al.,

                Defendants.

_____/

Case No. 2:18-cv-111

Honorable Gordon J. Quist

## OPINION

        This is a civil rights action brought by a federal prisoner, who was formerly housed in a Michigan State prison, under 42 U.S.C. § 1983 and *Bivens v. Six Unknown Named Agents of Fed. Bur. of Narcotics*, 403 U.S. 388 (1971). Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Schroeder, Billingslly, Call, Washington, and Durand. The Court also will dismiss all of the claims against Defendants Napel and Huss, with the exception of Plaintiff's claim in Count 5 that he was denied out-of-cell exercise.

## Discussion

### I.     Factual Allegations

Plaintiff is presently incarcerated with the Federal Bureau of Prisons (BOP) at the United States Penitentiary (USP), McCreary, located in Pine Knot, Kentucky. The actions about which he complains, however, occurred while he was under the jurisdiction of the BOP, but housed in the Michigan Department of Corrections (MDOC) at the Marquette Branch Prison (MBP) in Marquette, Marquette County, Michigan. In his amended complaint (ECF No. 16), Plaintiff sues MDOC Director Heidi Washington and MDOC Psychiatric Director/Supervisor (unknown) Bradshaw, together with the following MBP officials: Warden Erica Huss; former Warden Robert Napel; Health Service Administrator (unknown) Scott; Assistant Administrator Sarah Schroeder; Hearing Officer (unknown) Mohan; Food Service Administrator Ann Bousquet; Dentist (unknown) Gillet; Property Department Supervisor (unknown) Durand; and Nurse/Nurse Supervisor Brenda James. Plaintiff also sues the following officials at the Federal Correctional Institution (FCI), Milan, Michigan: Case Manager Matthew Call; and Unit Manager James Billingslly.

In his amended complaint, Plaintiff aggregates all of the allegedly unconstitutional actions that occurred during his two-year confinement at MBP, between August 4, 2016, and August 14, 2018.

In his first set of allegations, Plaintiff complains that Defendants Schroeder, Huss, and Napel violated his First Amendment rights and BOP policy by refusing to permit Plaintiff to correspond with his brother, who is also a prisoner in the custody of the BOP. In Count 2, Plaintiff alleges that Defendants Billingslly, Call, Napel, and Washington deprived him of his rights under

the Fifth and Fourteenth Amendments, by transferring him to and keeping him in a Level-V prison[1] without due process. In Count 3, Plaintiff alleges that Defendant Hearing Officer Mohan denied him due process when, on June 19, 2017, Mohan found Plaintiff guilty of two misconduct charges that Plaintiff alleges were false.

In his fourth cause of action, Plaintiff claims that Defendants Billingslly, Call, Washington, Napel, and Huss subjected him to cruel and unusual punishment by placing him and keeping him at MBP,

> Because MBP: (A) Is contaminated with Asbestos, Led [sic] poison, Black Mold, etc.; (B) Is Bugs Infected with no fumigation policy; (C) Is Amazingly Dirty with old Food smashed on the inside walls of the inmates' Housing Units; (D) Is Birds' feces infected in the inmates' recreation yard and side walks, etc.

(Am. Compl., ECF No. 16, PageID.71.) Plaintiff asserts that, as a result of the conditions, he has suffered unspecified health complications and bug bites.

Fifth, Plaintiff complains that Defendants Napel and Huss violated his rights under the Eighth Amendment when they denied him out-of-cell exercise on 250 days between April 2017 and August 2018, including 60 days straight from January 1, 2018, and March 2018. In his sixth count, Plaintiff alleges that Defendant Bousquet violated his rights under the Eighth Amendment by providing fewer than 2,000 calories per day in his segregation diet, causing him to lose 25 pounds and to become fragile and weak by the time of his transfer back to the BOP.

In his seventh cause of action, Plaintiff alleges that Defendants Warden Huss, Assistant Administrator Schroeder, and unspecified other staff have harassed him in retaliation for filing grievances. Plaintiff contends that Defendant Durand "disappeared personal and legal properties of Plaintiff in or about February 2017, June 13, 2017, December 22, 2017, and in or about February 2018." (*Id.*, PageID.73.) In addition, when Plaintiff transferred to the BOP on

---

[1] In the MDOC, security classifications, from least to most secure, are as follows: Levels I, II, IV, V and administrative segregation. Mich. Dep't of Corr., Policy Directive 05.01.130, ¶ B (effective Oct. 10, 2011).

August 14, 2018, Defendant Huss did not allow him to take his property, informing him that his property and his trust account funds would be forwarded to the BOP. Plaintiff complains that neither the money nor the property has yet arrived. Among the missing property are approximately 50,000 pages of legal documents, including court transcripts; miscellaneous legal journals, books, and magazines; a television; an MP3 player; family letters and pictures; religious material; a radio; clothes and shoes; personal hygiene and food items; and an address book. Further, Plaintiff alleges that he was subjected to other forms of harassment, including interference with his access to the telephone, denial of out-of-cell exercise, and access to medical care, all of which were retaliatory and violated the Eighth Amendment.

Eighth, Plaintiff contends that Defendant Bradshaw violated his Eighth Amendment rights when she discontinued Plaintiff's Wellbutrin on February 6, 2018. Plaintiff complains that he had taken Wellbutrin for over 10 years for his depression and PTSD. Plaintiff contends that Bradshaw's action was based on the fact that Wellbutrin was off-formulary for the MDOC.

In his ninth cause of action, Plaintiff complains that, for the two years he was housed at MBP, Defendants Brenda James and (unknown) Scott denied him medical care for his folliculitis and dermatitis, his dislocated left shoulder, his lower back problem, his foot problems requiring medical shoes with arch support, and his skin allergy requiring a cotton blanket and special creams.

Tenth, Plaintiff complains that Defendant Dentist Gillet deprived him of necessary dental care from August 2017 to October 2017, in violation of the Eighth Amendment, thereby subjecting Plaintiff to significant pain.

In his eleventh claim, Plaintiff alleges that Defendant Washington has an unconstitutional policy to deny inmates root canals to save their teeth. Plaintiff claims that he was denied three necessary root canals.

In his twelfth claim, Plaintiff alleges that Defendant Washington violated his Eighth Amendment right to adequate medical care by having a policy that prevents federal inmates like Plaintiff from participation in a Residential Treatment Program (RTP).

In Count 13, Plaintiff alleges that the Defendant Washington's policy of excluding federal inmates from RTP also violates the Equal Protection Clause.

Plaintiff seeks declaratory and injunctive relief, together with compensatory and punitive damages.

In a prior opinion and order, the Court dropped Defendants Mohan, Bousquet, Bradshaw, James, Scott, and Gillet from this action because they were misjoined, and Plaintiff's claims against them (Counts 3, 6, and 8-12) were dismissed without prejudice. The Court also dismissed without prejudice Count 13 against Defendant Washington, because it was misjoined. As a consequence, the Court now considers only Counts 1, 2, 4, 5, and 7 against Defendants Schroeder, Huss, Napel, Billingslly, Call, Washington, and Durand.

II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough

facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

In *Bivens*, the Supreme Court recognized a private right of action for damages against federal officers alleged to have violated a citizen's constitutional rights. *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 66 (2001). Liability for an actionable claim under *Bivens* is indistinguishable from an analogous claim under § 1983. *Id.* at 500-04.

III.    Count 1:  Denial of First Amendment Right to Correspond with Brother

In the first count of his complaint, Plaintiff alleges that he was denied his right under the First Amendment to freely correspond with his brother, who was also a prisoner.  He contends that the BOP permits correspondence between inmates who are relatives upon approval by both wardens.  Plaintiff asserts that, once one brother requests permission to correspond, staff must request that the warden with custody of the other prisoner allow such correspondence. Plaintiff complains that Defendants Schroeder, Huss, and Napel denied his request to correspond with his brother and never contacted the other prison.

To the extent that Plaintiff complains Defendants Schroeder, Huss, and Napel violated federal prison policy, he fails to state a claim cognizable under § 1983.  Claims under § 1983 can only be brought for "deprivation of rights secured by the constitution and laws of the United States."  *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982).  Even if state officials at MBP were governed by BOP policy, a failure to follow BOP policy is not a constitutional violation. *See, e.g., Reyes v. Holland*, No. 0:11-CV-00090, 2012 WL 639469, at *3 (E.D. Ky. Feb. 27, 2012) (citing *Bonner v. Federal Bureau of Prisons*, 196 F. App'x. 447, 448 (8th Cir. 2006); *Ortega v. Maynard*, 06–CV–084–HRW, 2006 WL 1877016, at *2 (E.D. Ky. July 06, 2006); *Antonelli v. Sanders*, No. 2:06CV00052SWW, 2006 WL 667964, at *3 (E.D. Ark. Mar. 15, 2006).

Plaintiff also fails to allege a First Amendment claim based on the fact that he was not allowed to correspond with his brother, who was another prisoner.  As continually emphasized by the Supreme Court, the problems of prison administration are peculiarly for resolution by prison authorities and their resolution should be accorded deference by the courts.  *See Shaw v. Murphy*, 532 U.S. 223, 228-29 (2001); *Washington v. Harper*, 494 U.S. 210, 224 (1990); *Turner v. Safley*, 482 U.S. 78, 84-96 (1987); *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987); *Bell v. Wolfish*, 441 U.S. 520, 547 (1979); *Jones v. North Carolina Prisoners' Labor Union*, 433 U.S. 119, 125-

126 (1977).  These concerns are even stronger when a state penal institution is involved.  *Glover v. Johnson*, 138 F.3d 229, 241 (6th Cir. 1998).

While inmates retain certain constitutional rights, prison officials may impinge on these constitutional rights if the regulation "is reasonably related to legitimate penological interests."  *See Turner*, 482 U.S. at 89.  To determine whether a prison official's actions are reasonably related to a legitimate penological interest, the Court must assess an official's actions by reference to the following factors: (1) whether there exists a valid, rational connection between the prison regulation and the legitimate governmental interest; (2) whether there remain alternative means of exercising the right; (3) the impact that accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally; and (4) whether there are ready alternatives available that fully accommodate the prisoner's rights at de minimis cost to valid penological interests.  *Turner*, 482 U.S. at 89-90.  Applying this standard, the Supreme Court has upheld a variety of limitations on First Amendment protections.  *See Shaw*, 532 U.S. at 229 (holding that prisoners do not have a First Amendment right to provide legal assistance to other prisoners) (quoting *Pell v. Procunier*, 417 U.S. 817, 822 (1974) (sustaining proscriptions on media interviews)); *Thornburgh v. Abbott*, 490 U.S. 401, 419 (1989) (applying *Turner* standard to a prison ban on certain publications); *Turner*, 482 U.S. at 93 (restricting inmate-to-inmate correspondence).  *See also North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. at 133 (upholding prohibition on prisoner labor unions).

In *Turner*, the Supreme Court has squarely held that the decision of prison administrators to bar all correspondence between inmates is reasonably related to legitimate penological interests.  *Id.* at 93.  The Court noted several legitimate security concerns posed by prisoners corresponding.  First, communications between felons can serve as a potential spur to criminal behavior.  *Id.* at 92.  Second, banning such communications helps prevent coordinated

criminal activity, such as gang activity. *Id.* Third, dangerous communications are difficult to regulate, because prisoners may communicate in code and avoid detection. *Id.* at 89, 93.

In addition, the Court held that no obvious, easy alternatives existed, other than to force officials to conduct extremely careful review of inmate correspondence. Such an alternative would impose an excessive burden on prison officials to "read every piece of inmate-to-inmate correspondence," yet still create an "appreciable risk of missing dangerous messages." *Id.* at 93. Further, the limitation on First Amendment rights is extremely narrow, restricting only one small class of communications. *Id.* at 92.

For all these reasons, the Supreme Court upheld the decision of prison officials to proscribe all inmate-to-inmate correspondence. Because the *Turner* Court has upheld under the First Amendment the precise restriction about which Plaintiff complains, Plaintiff's first set of allegations fails to state a claim.

IV.     Count 2:  Violation of Due Process by Transfer and Housing in Level V

Plaintiff alleges that Defendants Billingslly, Call, Napel, and Washington deprived him of his right to due process by transferring him to and keeping him housed in a Level-V prison without providing him due process.

The Supreme Court has held that a prisoner does not have a protected liberty interest in the procedures affecting his classification and security because the resulting restraint does not impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). In *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91 (6th Cir. 1995), the Sixth Circuit applied the *Sandin* test to the claim of a Michigan inmate that the mandatory language of the MDOC's regulations created a liberty interest that he receive notice and hearing before being placed in administrative segregation. The court held that regardless of the mandatory language of the prison regulations, the inmate did not have

a liberty interest because his placement in administrative segregation did not constitute an atypical and significant hardship within the context of his prison life. *Id; see also Mackey v. Dyke*, 111 F.3d 460, 463 (6th Cir. 1997). Without a protected liberty interest, plaintiff cannot successfully claim that his due process rights were violated because, "[p]rocess is not an end in itself." *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983).

Moreover, the Supreme Court repeatedly has held that a prisoner has no constitutional right to be incarcerated in a particular facility or to be held in a specific security classification. *See Olim*, 461 U.S. at 245; *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976); *Meachum v. Fano*, 427 U.S. 215, 228-29 (1976). The Sixth Circuit has followed the Supreme Court's rulings in a variety of security classification challenges. *See, e.g.*, *Harris v. Truesdell*, 79 F. App'x 756, 759 (6th Cir. 2003) (holding that prisoners had no constitutional right to be held in a particular prison or security classification); *Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003) (same); *O'Quinn v. Brown*, No. 92-2183, 1993 WL 80292, at *1 (6th Cir. Mar. 22, 1993) (prisoner failed to state a due process or equal protection claim regarding his label as a "homosexual predator" because he did not have a constitutional right to a particular security level or place of confinement). Because Plaintiff does not have a constitutional right to a particular security level or classification, he fails to state a claim.

V.     Count 4:  Level-V Confinement Violates the Eighth Amendment

Plaintiff alleges in his fourth cause of action that Defendants Billingslly, Call, Washington, Napel, and Huss violated his rights under the Eighth Amendment by placing him and keeping him at MBP, a Level-V prison. Plaintiff asserts that MBP is contaminated with asbestos, lead and black mold; that it is dirty, with food smashed on the inside walls of housing units; that bird feces are allowed in the prison yard and sidewalks; and that various bugs (spiders, mosquitoes,

and flies) are in the facilities, which are not fumigated. Plaintiff alleges that, as a result of the conditions, he has suffered unspecified health complications and bug bites.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims)); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)).

Plaintiff's only allegations against Defendants Billingslly and Call, officials at the Milan Federal Correctional Institution, are that the two Defendants were responsible for his transfer to MBP. Placement in a Level-V prison does not itself violate the constitution. Indeed, even placement in segregation is a routine discomfort that is "'part of the penalty that criminal

11

offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)
(quoting *Rhodes*, 452 U.S. 337, 347 (1981); *see also Jones v. Waller*, No. 98-5739, 1999 WL
313893, at *2 (6th Cir. May 4, 1999). Although it is clear that Plaintiff was denied certain
privileges as a result of his placement in a Level-V facility, he does not allege or show that he was
denied basic human needs and requirements. The Sixth Circuit has held that without a showing
that basic human needs were not met, the denial of privileges as a result of administrative
segregation cannot establish an Eighth Amendment violation. *See Evans v. Vinson*, 427 F. App'x
437, 443 (6th Cir. 2011); *Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008). Where
placement in segregation, a more restrictive housing assignment, does not implicate the Eighth
Amendment, Level-V housing necessarily cannot do so.

   Moreover, to the extent that Plaintiff complains about specific conditions at MBP,
he cannot demonstrate that Defendants Billingslly and Call were even aware of prison conditions
at a state institution located some 450 miles away from the Milan Federal Correctional Institution,
much less that they were deliberately indifferent to those conditions. As a result, Plaintiff fails to
state an Eighth Amendment claim against Defendants Billingslly and Call.

   In addition, Plaintiff's conclusory allegation about the presence of asbestos at MBP
does not rise to the level of an Eighth Amendment violation. A plaintiff may state a cause of action
under the Eighth Amendment for involuntary exposure to asbestos which results in a present injury
or an unreasonable risk of serious damage to his future health. *See Saaty v. Morris*, No. 95-3713,
1996 WL 160803, at *1 (6th Cir. Apr. 4, 1996). However, the fact that certain materials in the
housing unit contain asbestos does not in any way suggest that prisoners are currently at risk of
asbestos exposure. Plaintiff does not allege that he was exposed to friable asbestos, and he does
not allege that any asbestos-containing material is decaying so as to present a hazard to their future
health. (*Smith v. United States*, 561 F.3d 1090 (10th Cir. 2009) (holding that a prisoner who alleges

that prison employees knowingly ordered him to work in an unventilated closet while another inmate ripped out asbestos-containing pipe insulation was sufficient to state a claim).  In the absence of such factual allegations, Plaintiff's conclusory claim that he is being exposed to asbestos is unsupported.  Plaintiff therefore fails to allege a serious risk to inmate health or safety.  *See Leonard v. Ohio Dep't of Rehab. & Corr.*, No. 2:09-CV-961, at *1 (S.D. Ohio Jul. 30, 2010) (holding that in order to establish an Eighth Amendment violation on the basis of an alleged exposure to asbestos, plaintiff must do more than allege that asbestos is present at the prison).

Similarly, the mere presence of some mold in the prison does not create a condition "intolerable for prison confinement."  *Rhodes*, 452 U.S. at 348.  Exposure to black mold may, in an appropriate case, be sufficiently serious as to satisfy the objective component of the Eighth Amendment.  *Compare Board v. Farnham*, 394 F.3d 469, 486-87 (7th Cir. 2005) (mold in the ventilation system violates Eighth Amendment), *with Causey v. Allison*, No. 1:08CV155-RHW, 2008 WL 4191746, at *1 (S .D. Miss. Sept. 9, 2008) (no Eighth Amendment violation where prisoner claimed black mold was growing in the shower but "admits that he has had no medical problems resulting from the black mold"); *see also McIntyre v. Phillips*, No. 1:07-cv-527, 2007 WL 2986470, at *2-4 (W.D. Mich. Sept. 10, 2007) (dismissing prisoner action and holding that some exposure to black mold is a risk society has chosen to tolerate) (citing *Brady v. State Farm Fire & Cas. Co.*, No. 05-30716, 2006 WL 551388, at *3 (5th Cir. Mar. 8, 2006) (dismissing action because Plaintiff did not use due diligence in determining whether mold was airborne or simply present in her house)).  Here, Plaintiff does not suggest that the mold is airborne, and he does not allege that the presence of mold causes him a particular health problem or substantial risk to his health.  *See Morales v. White*, No. 07-2018, 2008 WL 4584340, at *14 (W.D. Tenn. 2008) (holding that allegations that black mold is located at some place within a housing unit is not sufficient to support an Eighth Amendment claim).  As a consequence, Plaintiff's allegation about the presence

of mold does not demonstrate the existence of a sufficiently serious risk to prisoner health. *Ivey*, 832 F.2d at 954.

Plaintiff's allegation concerning the presence of lead is wholly conclusory. He simply alleges that MBP is contaminated with "led poison." Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678-79; *Twombly*, 550 U.S. at 555. Plaintiff therefore fails to state a claim based on the presence of lead in an unidentified place in the prison.

Moreover, Plaintiff's allegation that spiders, mosquitoes, and flies were present at MBP during the two years he was housed at the facility, coupled with his complaint that he on occasion "suffered painful bug bites by spiders, mosquito[e]s, flies, etc." (ECF No. 16, PageID.71) fall far short of demonstrating "conditions intolerable for prison confinement," *Rhodes*, 452 U.S. at 348. *See, e.g., Brooks v. Daniels*, No. 3:12CV-P446-S, 2012 WL 3866453, at *2 (W.D. Ky. Nov. 19, 2012) ("While unpleasant, the alleged conditions of having insects in a cell is not below the constitutional standard of the minimal civilized measures of life's necessities.") (internal quotations omitted); *Williams v. Philips*, No. 1:10-cv-131, 2012 WL 370749, at *7 (E.D. Cal. Aug. 27, 2012) (holding that mere presence of annoying insects does not rise to an Eighth Amendment violation and stating that "Plaintiff is not living at the Ritz; he is in prison and the burden of swatting 10 or even 25 flies per day is not cruel and unusual punishment."); *Mitchell v. Dodrill*, 696 F. Supp. 2d 454, 467 (M.D. Pa. 2010) (holding that the allegation that a prisoner's cell is "infested with 'cockroaches, spiders, worms, [g]nats, mice and other unknown insects'" fall short of demonstrating the existence of a substantial risk of serious harm).

Nor can the presence of bird droppings in the prison yard and on sidewalks demonstrate an Eighth Amendment violation. *See Griffin v. Collins*, No. 2:09-cv-210, 2010 WL 2605838, at *3 (S.D. Ohio May 14, 2010) ("[T]he Court is not convinced that the presence of birds

and bird droppings in the cafeteria amount to a "sufficiently serious" deprivation for purposes of the Eighth Amendment."); *Moore v. Cohn*, No. 1:03-cv-2056, 2006 WL 2604596, at *3 (S.D. Ind. Aug. 25, 2006) (holding that the plaintiff had not shown that the evidence of bird droppings in the housing unit offended contemporary standards for decency).  Here, Plaintiff alleges only that bird droppings were present in the outdoor areas of the prison.  Such an allegation falls far short of showing that prison conditions fell below the requisite minimal civilized measure of life's necessities.

Further, Plaintiff's allegations against Defendants former-Warden Napel, Warden Huss, and MDOC Director Washington about the cleanliness of the facility are limited to a conclusory statement about the existence of these unsatisfactory conditions. Plaintiff merely implies that, as supervisory officials for MBP and the MDOC, Defendants Napel, Huss, and Washington are responsible for failing to ensure that their facilities are sufficiently hygienic at all times.  Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability.  *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009).  A claimed constitutional violation must be based upon active unconstitutional behavior.  *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002).  The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act.  *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004).  Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance.  *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).  "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Iqbal*, 556 U.S. at 676.  Plaintiff

has failed to allege that Defendants Napel, Huss, or Washington engaged in any active unconstitutional behavior with respect to the cleanliness of MBP units.

For all these reasons, Count 4 of the complaint fails to state an Eighth Amendment claim.

## VI. Count 5: Eighth Amendment – Out-of-Cell Exercise

Plaintiff complains that Defendants Napel and Huss denied him out-of-cell exercise on a total of 250 days during the period from April 2017 and August 2018, in violation of the Eighth Amendment. In addition, he claims that, on one occasion, he was denied out-of-cell exercise for more than 60 straight days, from January 1, 2018, to March 2018.

"It is generally recognized that a total or near-total deprivation of exercise or recreational opportunity, without penological justification, violates Eighth Amendment guarantees. Inmates require regular exercise to maintain reasonably good physical and psychological health." *Patterson v. Mintzes*, 717 F.2d 284 (6th Cir. 1983); *see also Walker v. Mintzes*, 771 F.2d 920, 927 (6th Cir. 1985). The question whether a deprivation of exercise time rises to the level of a constitutional violation is a fact dependent inquiry. *See, e.g., Meador-Bey v. Jones*, No. 92-1448, 1992 WL 376889 (6th Cir. 1992) ("The determination of when restricted exercise rises to a level of constitutional magnitude depends upon the facts of each case"). In making this inquiry, courts should consider the totality of the circumstances, including the length of the deprivation, the availability of reasonable alternatives to out-of-cell exercise time, penological justifications for the deprivation, whether the inmate suffered any ill health effects as a result of the deprivation, and the amount of out-of-cell time per day the inmate is allowed. *See Patterson*, 717 F.2d at 289; *see also Rodgers v. Jabe*, 43 F.3d 1082, 1086 (6th Cir. 1995); *Dabney v. McGinnis*, No. 97-CV-489A, 2006 WL 1285625, at *4 (W.D.N.Y. 2006) (citing the following factors courts should consider in examining a denial of exercise claim: (1) duration of the

deprivation, (2) extent of the deprivation, (3) availability of other out-of-cell activities, (4) opportunity for in-cell exercise, and (5) justification for the deprivation).

At this stage of the proceedings, the Court concludes that Plaintiff has sufficiently alleged an Eighth Amendment claim against Defendants Napel and Huss, arising out of his deprivation of out-of-cell exercise.

VII.     Count 7:  Retaliatory Harassment and Eighth Amendment

Plaintiff alleges in Count 7 of his complaint that he was harassed by Defendants Huss, Durand, Schroeder, and other unidentified MBP officials, in retaliation for filing grievances. In addition, he alleges that he was deprived of his legal property by Defendants Durand and Huss, ostensibly in violation of the Eighth Amendment.  Specifically, Plaintiff alleges that Defendant Durand was responsible for the disappearance of certain of Plaintiff's personal and legal property in February 2017, June 13, 2017, December 22, 2017, and February 2018.  Plaintiff alleges that Defendant Huss failed to allow Plaintiff to take his property and prisoner account funds with him when he was transferred back to the BOP, advising him that they would be forwarded.  Plaintiff claims that he has not received either his property or his money.

Although Plaintiff specifically references only the Eighth Amendment, his allegations arguably can be construed to also raise claims of retaliation in violation of the First Amendment, and deprivation of property without due process.

A.     **Retaliation**

Plaintiff claims that Defendants Durand and Huss confiscated his property in retaliation for his filing of grievances.  Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution.  *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc).  In order to set forth a First Amendment retaliation claim, a plaintiff must establish that:  (1) he was engaged in protected conduct; (2) an adverse action was taken

against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987); *Vega v. DeRobertis*, 598 F. Supp. 501, 506 (C.D. Ill. 1984), *aff'd*, 774 F.2d 1167 (7th Cir. 1985). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)); *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Skinner v. Bolden*, 89 F. App'x 579, 579-80 (6th Cir. 2004) (without more, conclusory allegations of temporal proximity are not sufficient to show a retaliatory motive).

Plaintiff merely alleges the ultimate fact of retaliation in this action. He has not presented any facts concerning the nature of the alleged grievances he filed, the individual(s) he grieved, or when such alleged grievances were filed in relation to the adverse action. Plaintiff also utterly fails to allege facts suggesting that Defendants' actions were motivated by Plaintiff's

grievances.  Instead, his claim of retaliation is entirely conclusory and speculative.  He therefore fails to state a retaliation claim against either Durand or Huss.

## B.    Eighth Amendment

Plaintiff argues that Defendants' confiscation of or failure to forward his property amounts to cruel and unusual punishment in violation of the Eighth Amendment.  As earlier discussed, for a deprivation to violate the Eighth Amendment, it must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347.  The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus*, 591 F.3d at 479-80 (citing *Farmer*, 511 U.S. at 834 (applying deliberate indifference standard to medical claims)); *see also Helling*, 509 U.S. at 35 (applying deliberate indifference standard to conditions of confinement claims)).  Plaintiff's allegations concerning the deprivation of his personal and legal property fall woefully short of demonstrating the sort of condition intolerable for prison confinement.  He therefore fails to allege an Eighth Amendment claim arising out of that deprivation.

## C.    Due Process

To the extent that Plaintiff intends to allege that he was deprived of his property without due process, his claim is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986).  Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy.  If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law."

*Parratt*, 451 U.S. at 537. This rule applies to both negligent and intentional deprivations of property, as long as the deprivation was not done pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984). Because Plaintiff's claim is premised upon allegedly unauthorized acts of state officials, he must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479-80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). Under settled Sixth Circuit authority, a prisoner's failure to sustain this burden requires dismissal of his § 1983 due-process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Plaintiff has not sustained his burden in this case. Plaintiff has not alleged that state post-deprivation remedies are inadequate. Moreover, numerous state post-deprivation remedies were or are available to him. First, a prisoner who incurs a loss through no fault of his own may petition the institution's Prisoner Benefit Fund for compensation. Mich. Dep't of Corr., Policy Directive 04.07.112, ¶ B (effective Dec. 12, 2013). Aggrieved prisoners may also submit claims for property loss of less than $1,000 to the State Administrative Board. Mich. Comp. Laws §600.6419; MDOC Policy Directive 03.02.131 (effective Oct. 21, 2013). Alternatively, Michigan law authorizes actions in the Court of Claims asserting tort or contract claims "against the state and any of its departments, commissions, boards, institutions, arms, or agencies." Mich. Comp. Laws § 600.6419(1)(a). The Sixth Circuit specifically has held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480. Plaintiff does not allege any reason why a state-court action would not afford him complete relief for the

deprivation, either negligent or intentional, of his personal property. Accordingly, Plaintiff's due process claim will be dismissed.

### D. Remaining Claims

Upon review, the Court concludes that Plaintiff's allegations are sufficient to state a claim against Defendants Napel and Huss based on their denials of out-of-cell exercise (Count 5). The Court therefore will order service of the complaint on Defendants Napel and Huss.

### <u>Conclusion</u>

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Schroeder, Billingslly, Call, Washington, and Durand will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, all claims against the remaining Defendants (Napel and Huss), with the exception of Plaintiff's claim that he was denied out-of-cell exercise (Count 5).

An order consistent with this opinion will be entered.

Dated: April 3, 2019                                    /s/ Gordon J. Quist
                                           _____
                                                     GORDON J. QUIST
                                           UNITED STATES DISTRICT JUDGE