UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JORGE SOLANO-MORETA #106870,

        Plaintiff,

v.

ERICA HUSS, et al.,

        Defendants.

_____/

Case No. 2:18-cv-00111

Hon. Gordon J. Quist
U.S. District Judge

## REPORT AND RECOMMENDATION

### I. Introduction

This is a civil rights action brought by prisoner Jorge Solano-Moreta pursuant to 42 U.S.C. § 1983 for events that occurred while he was housed at the Marquette Branch Prison. Solano-Mareta is a federal prisoner, now housed at the Thomson Penitentiary in Thomson, Illinois. Solano-Moreta's remaining claim involves an alleged denial of out-of-cell exercise during a 250-day period between April 2017, and August 2018, including the denial of out-of-cell exercise for a period of 60 days between January 1, 2018, and March 2018. The remaining Defendants are Warden Erica Huss and former Warden Robert Napel.[1]

Defendants have filed motions for summary judgment arguing that Solano-Moreta failed to exhaust his administrative remedies against them because he failed

---

[1] Napel is now the Assistant Deputy Director of the Michigan Department of Corrections (MDOC) Correctional Facilities Administration, Northern Region.

to identify them as the persons responsible for denying him out-of-cell exercise. (ECF No. 30.)

Solano-Moreta argues that he did not need to name each Defendant because the MDOC waived the procedural default by addressing the merits of his grievance through Step III of the grievance process. Solano-Moreta additionally stated that he complained to his unit counselor and asked that the issue be submitted to the Warden's Forum as required by policy. Solano-Moreta states that, despite this request, the issue was never raised.

The undersigned has reviewed the pleadings and associated documents and respectfully recommends that the Court grant the summary judgment motion and dismiss this case.

**II. Summary Judgment Standard**

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005. The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing

the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### III. Exhaustion of Administrative Remedies

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 549 U.S. 199, 212-16 (2007). "[W]here the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative

process. *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones*, 549 U.S. at 218-19; *Woodford v. Ngo,* 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218-19. In rare circumstances, the grievance process will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. ___, 136 S.Ct. 1850, 1859-60 (2016).

Michigan Dept. of Corrections (MDOC) Policy Directive 03.02.130 (eff. date 07/09/07, superseded on 03/18/19), sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ P. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶¶ P, V. The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ V. The

Policy Directive also provides the following directions for completing grievance forms: "The issues should be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ R (emphasis in original).

When prison officials waive enforcement of these procedural rules and instead consider a non-exhausted claim on its merits, a prisoner's failure to comply with those rules will not bar that prisoner's subsequent federal lawsuit. *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010). The Sixth Circuit has explained:

> [A] prisoner ordinarily does not comply with MDOCPD 130—and therefore does not exhaust his administrative remedies under the PLRA—when he does not specify the names of each person from whom he seeks relief. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010) ("Requiring inmates to exhaust prison remedies in the manner the State provides—by, say, identifying *all* relevant defendants—not only furthers [the PLRA's] objectives, but it also prevents inmates from undermining these goals by intentionally defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation process."). An exception to this rule is that prison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits. *See id.* at 325. We have also explained that the purpose of the PLRA's exhaustion requirement "is to allow prison officials 'a fair opportunity' to address grievances on the merits to correct prison errors that can and should be corrected to create an administrative record for those disputes that eventually end up in court." *Id.* at 324.

*Mattox v. Edelman*, 851 F.3d 583, 590-91 (6th Cir. 2017).[2]

---

[2] In *Mattox*, the Sixth Circuit held that a prisoner may only exhaust a claim "where he notifies the relevant prison . . . staff" regarding the specific factual claim "giving the prison staff a fair chance to remedy a prisoner's complaints." *Id.* at 596. For example, grieving a doctor about his failure to give cardiac catheterization failed to grieve the claim that the doctor erred by not prescribing Ranexa.

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due. MDOC Policy Directive 03.02.130 at ¶¶ T, BB. The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for medical care grievances. *Id.* at ¶ DD.

If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ T, FF. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* at ¶¶ T, FF. The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ GG. "The total grievance process from the point of filing a Step I grievance to providing a Step III response shall generally be completed within 120 calendar days unless an extension has been approved." *Id.* at ¶ S.

IV. **Analysis.**

The only grievance identified as relevant by either party is grievance **MBP-18-03-0374-22F**. (ECF No. 31-3, PageID.211-215.) Although that grievance proceeded through all steps of the grievance process, Defendants argue that Solano-Moreta failed to name them in his grievance and only named "the COs." Naming only "the COs" establishes that Solano-Moreta intended to grieve only the Corrections Officers.

6

In addition, Defendants argue that the content of the grievance did not fully match the time period claimed in the complaint.

At Step I, Solano-Moreta wrote:

> **Be brief and concise in describing your grievance issue.** If you have any questions concerning the grievance procedure, refer to PD 03.02.130 and OP 03.02.130 available in the prison Law Library.
>
> | Name (print first, last) | Number | Institution | Lock Number | Date of Incident | Today's Date |
> |---|---|---|---|---|---|
> | Jorge Solano-Moreta | 106870 | MBP | E-B16 | Daily | 3/8/18 |
>
> What attempt did you make to resolve this issue prior to writing this grievance? On what date? Daily
> If none, explain why. I spoke about with many stoFF.
>
> State problem clearly. Use separate grievance form for each issue. Additional pages, using plain paper, may be used. Four copies of each page and supporting documents must be submitted with this form. The grievance must be submitted to the Grievance Coordinator in accordance with the time limits of OP 03.02.130.
>
> I was denied yard Time For (62) days straight all in violation of MDOC's Policies and my rights, From 12/27/17 to 2/27/18. I was provided yard time on 2/27/18, 3/2/18, 3/3-4-5/18 which are only (5) days yard restriction Brake. Per MDOC's Policies I'm required to be provide 14 days yard restriction Brake, 7 days For every 30 days. I'm requesting to be provide with the 9 days yard brake i'm entitled; that were not provided to me and that ==the COs owe me.==
>
> Jorge Solano
> Grievant's Signature

(ECF No. 31-3, PageID.214 (highlighting added).) This Step I grievance clearly shows that Solano-Moreta named only "the COs" and did not name Defendants individually or, alternatively, name "the wardens" (or some similar title) as the focus of his grievance.

About two weeks later, Lt. Sebaly responded the grievance, finding that no policy violation had taken place.

7

> **SUMMARY**
>
> Prisoner Solano-Moreta was LOP break during the week 1-28-18 through 2-3-18. Prisoner Solano-Moreta was offered yard during his break. On 2-2-18 prisoner Solano-Moreta went to yard during his break. The other days during his break that he was offered yard he refused as annotated on the CAJ-278. On 1-31-18 there was no yard for the entire facility as the emergency siren was activated. I find no violation of policy by staff.

| RESPONDENT NAME: | Lt. Sebaly | TITLE: | CSS2 |
|---|---|---|---|
| RESPONDENT SIGNATURE: | [signature] | DATE: | 3-22-18 |

This response prompted Solano-Moreta to file a Step II appeal, which is shown below.

| Name (Print first, last) | Number | Institution | Lock Number | Date of Incident | Today's Date |
|---|---|---|---|---|---|
| SOLANO-MORETA | 106870 | MBP | EB16 | Daily | 3/27/18 |

**STEP II — Reason for Appeal** Because i'M Not satisFied with the Step I response because It contain False statements/Facts because on 2/2/18 i was Not oFFered Yard Nor i went to yard and Video Footages can conFirm my claim. I was oFFered yard on 2/27/18, 3/2-5/18, only, since 12/27/18 and that was a Violation of Policies. I was denied Yard For 62 days Straight and i was oFFered yard 5 days only since 12/27/18 and Camera Footages can conFirm this cause i went to yard on 3/3-4-5/18. I'M requesting to be provide with the yard days ==COs owe me.==

**STEP II — Response**

Date Received by Step II Respondent: 3-28-18

(*Id.* at PageID.212 (highlighting added).)

Solano-Moreta's Step II appeal again reflects that he was focused on actions by the "COs."

Warden Huss responded to this Step II appeal. Her response is shown below.

8

> **STEP II – Response:**
>
> A review of your Step II appeal has been completed. I reviewed your Step I grievance and the response regarding your claim that you were not provided a break from your LOP and provided an opportunity to participate in out of cell exercise at least one hour a day five days a week. In compliance with PD 04.05.12 paragraph V line 21 which states A minimum of one hour per day, five days per week of out-of-cell exercise, except that, for reasons of safety or security, a prisoner serving a sanction of detention or loss of privileges which includes the loss of yard may be provided such exercise only after s/he has served a period of time determined by the Warden or Deputy Warden; however, the prisoner shall not be deprived of out-of-cell exercise for more than 30 consecutive days without being provided a seven-day break during which the prisoner shall be given the opportunity for out-of-cell exercise at least one hour per day, five days per week. A review of your CAJ-278 was done as part of the step I process. The CAJ-278 reflects that you were provided a 7 day break on 1/28/18 through 2-3-18. You were provided an opportunity for out of cell exercise for at least one hour five days per week in compliance with PD 04.05.120. You went to yard on 2-2-18, the other days you refused your opportunity for out of cell exercise. The response at Step I is supported and your appeal is denied.
>
> Erica Huss, Warden   [signature]   3/30/18
> Respondent's Name    Respondent's Signature   Date

(*Id.* at PageID.213.) This was the first time Huss's name appeared in any of the grievance documents.

After Defendant Huss responded to Solano-Moreta's Step II appeal, Solano-Moreta filed a Step III appeal. His Step III appeal is shown below.

> **STEP III – Reason for Appeal** Because i'm not satisfied with the Step II response because it contain False Statements/Facts by Warden Erica Huss because i was not offered yard time on 1-28-18 through 2-3-18 and video footages can confirm that i did not went to yard on 2-2-18 as stated by the warden on the responce. Since 12-27-17 to 3-5-18 i was provided (5) days yard only and that violated MDOC's Policies and my rights. I was offered yard on 2-27-18 to 3-5-18 since 12-27-17 and camera footages can confirm this.

(*Id.* at PageID.212 (highlighting added).) Here, Solano-Moreta complains that Warden Huss made false statements in the Step II response. Solano-Moreta does not, however, accuse Huss of being involved in denying him yard or out-of-cell exercise time.

Solano-Moreta's Step III appeal was subsequently denied. (*Id.* at PageID.211.)

9

Solano-Moreta's grievance fails to name former Warden Napel. In addition, he only mentions Defendant Huss when he asserts that her Step II response contained false statements. The grievance documents indicate that Solano-Moreta claimed that Corrections Officers were the persons responsible for denying him yard or out-of-cell exercise time. Thus, Solano-Moreta has entirely failed to name Huss and Napel as the individuals responsible for improperly denying him yard or exercise time. The MDOC requires a prisoner to identify the individuals being grieved. *Reed-Bay*, 603 F.3d at 324-25, and the subject matter of the grievance. *Mattox*, 851 F.3d at 596. A plaintiff must name each defendant in a properly exhausted grievance before he files a federal complaint. *Kean v. Hughes*, No. 1:12-cv-847, 2013 WL 5771146 at *2 (W.D. Mich. Oct. 24, 2013) ("The MDOC had no reason to address a claim against any other employee.") Thus, the undersigned concludes that Solano-Moreta failed to exhaust his claims against Defendants.

Solano-Moreta argues that any procedural irregularities should be ignored because the MDOC addressed his grievance on the merits. This argument overlooks the fact that Solano-Moreta did not identify Huss or Napel as the persons who were responsible for denying him out-of-cell exercise. The simple fact that MDOC ruled on the merits of a grievance against unnamed *Corrections Officers* does not open the door to a federal lawsuit against Wardens who were not even accused of the improper action in the grievance documents. As explained above, the purpose of the exhaustion requirement is to give prison officials a fair opportunity to address grievances on the merits and to create an administrative record for those disputes

that eventually end up in court. Here, the complaint that was addressed was a complaint against Corrections Officers, not a complaint against the Wardens. Thus, the purpose of the exhaustion requirement was not fulfilled with regard to Solano-Moreta's complaints against the Wardens.

Solana-Moreta also argues that he did not have to file a grievance to exhaust his claims because he told the prison counselor to address his claims at the Warden's Forum Meeting. Solano-Moreta asserts that since this issue involves the entire prison population, the Warden's Forum Meeting is the appropriate place to raise the issue. *See* Michigan Dept. of Corrections (MDOC) Policy Directive 04.01.150 (eff. Date 11/01/10) (Wardens' Forum). First, there is nothing in the record that supports Solano-Moreta's claim that the entire prison population was concerned with his alleged denial of out-of-cell exercise. Second, his grievance on the issue was not rejected as raising an issue concerning the entire prison population. Third, Solano-Moreta did not properly raise the issue in the Warden's Forum Meeting. Fourth, even if he had raised the issue during the Warden's Forum Meeting, Solano-Moreta still needed to exhaust his claims against each Defendant by filing an appropriate grievance through each step of the process.

### V. Recommendation

The undersigned respectfully recommends that this Court grant Defendants' motion for summary judgment (ECF No. 30) due to Solano-Moreta's failure to exhaust his administrative remedies. This recommendation, if adopted, will result in dismissal of the complaint.

It is further recommended that the Court deny Solano-Moreta's motion to produce legal documents (ECF No. 25) as moot.[3]

## NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).


Dated:  October 10, 2019                                /s/ *Maarten Vermaat*
                                                        MAARTEN VERMAAT
                                                        U. S. MAGISTRATE JUDGE

---

[3] The Court held a status conference on August 12, 2019, and Solano-Moreta did not express concerns regarding his legal documents at that time. (ECF No. 34.)